IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DOUGLAS W. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-122-NJR-DGW |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., DR. PHIL MARTIN, DR. JOSHUA HOHENBARY, and DR. JOHN COE, | ) ) ) | |
| | ) | |
| Defendants. | | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Wexford Health Sources, Inc., (and joined by Defendants Hohenbary and Coe) (Doc. 60) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

This matter is proceeding on Plaintiff's Third Amended Complaint, recently filed on June 17, 2016 (Doc. 102). The Third Amended Complaint is construed to allege the following claims:

Count 1: Deliberate indifference to a serious medical need against Defendant Dr. Hohenberry for failing to treat Plaintiff's eye condition from June 7, 2012, to the present.

Count 3: Deliberate indifference to a serious medical need against Wexford

> Health Sources, Inc., for maintaining unconstitutional practices of policies with respect to staffing the optometrist position and procedures for requesting medical care.
>
> Count 4: Deliberate indifference to a serious medical need against Defendant Dr. John Coe for failing to treat Plaintiff's eye condition from June 7, 2012, to the present.
>
> Count 5: Failure to intervene against Defendant Dr. John Coe for failing to prevent harm related to his eye condition caused by Dr. Hohenberry's deliberate indifference.
>
> Count 6: Deliberate indifference to a serious medical need against Defendant Dr. Phil Martin for failing to treat Plaintiff's eye condition and/or by delaying treatment.

Defendant, Wexford Health Sources, Inc., filed a Motion for Summary Judgment on the issue of Exhaustion of Administrative Remedies on October 6, 2015 (Doc. 60). Plaintiff filed a response on November 2, 2015 (Doc. 79). Defendant Wexford filed a Reply on November 10, 2015 (Doc. 84). Two Defendants, Dr. Coe and Dr. Hohenbary, were permitted to join in the Motion on November 12, 2015 (Doc. 85). On November 23, 2015, Plaintiff filed an objection to the reply brief, contending that no extraordinary circumstances warrant the filing (Doc. 88).

A hearing was held, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on December 1, 2015 in which Defendants appeared by counsel and Plaintiff appeared by video-conference.

On March 30, 2016, Plaintiff was permitted to proceed on a claim against a previously dismissed Defendant, Dr. Phil Martin (Doc. 94). This claim, designated as Count 6, asserts a deliberate indifference claim against Dr. Martin (Doc. 74). Dr. Martin has not joined in the Motion for Summary Judgment as of the date of this Report and Recommendation.

## FINDINGS OF FACT

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. In particular, he alleges that they failed to adequately treat his serious eye condition, or that they unreasonably delayed treatment, since June 7, 2012, while he was incarcerated at the Lawrence Correctional Center.

On September 11, 2013, Plaintiff submitted a grievance in which he complained that he had been waiting for 17 months to get his eyes checked (Doc. 79, p. 39-40). He states that he met "with the Doctor" who "recommended that I get my eyes checked ASAP" (*Id.*). He further indicates: "I just cannot understand and find all this surprising because 100% of all interactions with Healthcare and all of its staff (excluding this incident) have been perfect and timely" (spelling and some grammar corrected) (*Id.*). On September 12, 2013, Plaintiff's counselor, Scott Reis, responded that he was scheduled to see an optometrist that month (*Id.*).

On November 7, 2013, Plaintiff submitted another grievance in which he states that he didn't see the optometrist in September and that he is being denied adequate health care (Doc. 79, p. 42). In particular, the grievance states: "So I waited, waited and waited, the 17 days go by and now were in the month of November. It is now clear to me that the response I was given on my previous grievance was nothing more than another example of what I've been going through for the past 17 months [sic]" – namely, being put-off (*Id.*). Counselor Reis responded on November 8, 2013, indicating that he had been moved down the list for various reasons and that he was tentatively scheduled for November 12, 2013 (*Id*. p. 41).

Neither of Plaintiff's grievances mention any of Defendants by name; however, the reference to "the Doctor" could refer to Dr. Coe.

Both the September 11 and the November 7 grievances contain a date stamp of

November 25, 2013 from the Office of Inmate Issues (i.e. the Administrative Review Board (ARB)). In its response, which is dated May 10, 2014, the ARB states that the grievances do not include a grievance officer's or Warden's signature and that they are untimely. In a handwritten notation, the ARB indicates that Plaintiff has not provided the required signatures, that it is beyond the time when he can now acquire the signatures, and that his grievances, in any event, were filed more than 60 days from the complained of events (Doc. 61-5, p. 1).

Plaintiff was transferred to Lawrence Correctional Center on December 1, 2011. His Cumulative Counseling Summary, from that date, reveals that Plaintiff first mentioned the failure to see an optometrist on July 1, 2013 (Doc. 61-3, p. 2). The next relevant entry is on September 13, 2013 and is about the September 11, 2013 grievance; then again on October 28, 2013; then on November 8, 2013 when his second grievance was responded to (*Id.* p. 1). There is no further mention of eye care through July 9, 2014.

Plaintiff claims that his grievances were being intercepted by Counselor Reis and that the Counselor refused, or failed, to forward the grievances to the grievance officer for review (Doc. 79, p. 29). He further states that he resubmitted the September 11, 2013 grievance on October 27, 2013 with a note that it was to be sent to the grievance officer (*Id.*). When Counselor Reis brought the grievance back to Plaintiff, Plaintiff again told him to forward it to the grievance officer, but he refused (*Id.*). Plaintiff also resubmitted his November 7, 2013 grievance as an emergency grievance on November 12, 2013 (*Id*. p. 30). Plaintiff states that he had to go through his counselor in order to get the grievance to the grievance officer (*Id*. p. 31).

Plaintiff attributes Counselor Reis' actions to an incident that occurred on June 1, 2013 when he complained about his eye care to Counselor Reis. In response, Counselor Reis placed Plaintiff on suicide watch on June 4, 2013, for no reason. Counselor Reis also was upset that

Plaintiff would inform him of proper procedures and policies (*Id*. p. 28).

At the hearing held on December 1, 2015, Plaintiff testified that he first noticed pain in his eyes around June 1, 2012 (Doc. 92, p. 7). He filled out the September 7, 2013 grievance and placed it in the grievance box in his housing unit (*Id*. p. 13). When he received a response from Counselor Reis, he states that he immediately placed it back in the box to go to the grievance officer – Plaintiff later clarified that he resubmitted it at the end of September (*Id*. pp. 14-15). Counselor Reis brought the grievance back to Plaintiff and verbally told him that he would be schedule to see the optometrist – Plaintiff states that there was a little argument at his cell and that Counselor Reis told him that it would be better if he handled the situation his way (*Id*. p. 16).

As to the November 11 grievance, when he received it back from Counselor Reis with the response, he placed a request slip on the grievance for it to be forwarded to the grievance officer (*Id*. p. 17). However, Officer Reis gave it back to Plaintiff, who again questioned why it was not being forwarded to the grievance officer (*Id*.). Plaintiff then resubmitted it as an emergency grievance by placing it again in the housing unit box (Plaintiff states that all grievances, even emergency grievances, go into one box) (*Id*. p. 18). He received no response to that emergency grievance (*Id*.). He then mailed his grievances to the ARB (*Id*. p. 19). Plaintiff filed a complaint in this Court on February 3, 2014 (prior to receiving the ARB's May 10, 2014 response).

There is some contradiction in Plaintiff's version of events. For example, he indicated at the hearing that, as to the September 11 grievance, "I believe that grievance said I would be seen in the month of September and I waited and I waited and I wasn't see, so I was still within the 60 days, so I resubmitted it to get it to the grievance officer" (Doc. 92, p. 15). The implication is that Plaintiff resubmitted the grievance at the end of September. In his affidavit, however,

Plaintiff states that he resubmitted the grievance on October 27, 2013, a month later (Doc. 79, p. 29).[1] And, it appears that instead of resubmitting his grievance at the end of September, Plaintiff merely filled out an "Offender Request" slip informing Counselor Reis that he had not been seen (Doc. 79, p. 48). Moreover, in Plaintiff's November 7 grievance, there is an implication that Plaintiff did not resubmit his September 11 grievance at all because he received a favorable response. In the November 7 grievance, Plaintiff states that:

> "I was just happy to hear I would be seeing the optometrist within the next 17 days [as indicated in Counselor Reis' response to the September 11 grievance]. So I waited, waited, and waited, the 17 days go by and now were in the month of November. It is now clear to me that the response I was given on my previous grievance was nothing more than another example of what I've been going through for the past 17 months [sic]" (Doc. 79, p. 42).

Thus, there is some question as to whether Plaintiff, in fact, attempted to have his September 11 grievance reviewed by a grievance officer.

Nonetheless, the Court finds that Plaintiff is credible in the following facts. Plaintiff submitted a September 7, 2013 grievance by placing it in the grievance box as required. He received a response from Counselor Reis indicating that he would see the optometrist by the end of September, 2013. When Plaintiff was not seen by the optometrist, he asked Counselor Reis to forward the grievance to a grievance officer on October 27, 2013. Counselor Reis failed to forward the grievance. Plaintiff then submitted a November 7 grievance by placing it in the box and specifically asked that it be forwarded to the grievance officer directly. That grievance was not forwarded to the grievance officer. When Plaintiff received a response on November 8, he copied the grievance, checked the "emergency" box, and placed it in the grievance box for review by the Warden. He received no response to that grievance. Plaintiff then forwarded his

---

[1] Plaintiff also states in an "Offender Request" form that is dated October 27, 2013, that he wants his September 11 grievance forwarded to the grievance officer (Doc. 79, p. 51).

September 11 and November 7 grievances to the ARB, which responded on May 4, 2014. The Court finds Plaintiff credible because of the persistence he displayed in attempting to see the optometrist. Plaintiff also appears to be fully familiar with the grievance process and, while the tone of his grievances display a certain level of acerbity and cynicism, it is clear that he was interested in getting his eyes checked in a timely manner. Finally, the Court finds that even though it was not required of him, Plaintiff made multiple requests to either see the optometrist or to have someone within the IDOC review the matter so that he could get relief.

### CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen*

*v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first

attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15

(citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

In its memorandum, Wexford's sole argument is that Plaintiff failed to acquire the necessary grievance officers' and Chief Administrative Officers' responses to his September and November grievances (Doc. 61, p. 4).[2] Drs. Hohenbary and Coe add no other arguments in their joinder motions (Docs. 82 and 83). In response, Plaintiff indicates that his grievances were intercepted by Counselor Reis and not forwarded to the grievance officer, despite his many requests (Doc. 79). In their reply brief, Defendants admit that "[f]or an inmate to receive a grievance a [sic] Grievance Officer and CAO response, the Clinical Services Counselor must first forward the inmate grievance to the Grievance Officer" (Doc. 84, p. 7). The reply otherwise indicates that Defendants are without knowledge as to other salient facts set forth in Plaintiff's response. The reply should not be stricken pursuant to Local Rule 7.1 because exceptional circumstances exist: namely, Plaintiff's statement of additional and material facts.

This Court finds Plaintiff credible in his assertions that he submitted the September 11 grievance properly, by placing it in the grievance box in his housing unit. This grievance only asked that his eyes be checked in a timely fashion. In response, he was told by his counselor that he was scheduled to see the optometrist that month. When Plaintiff was not seen in the promised time, he requested that his grievance be forwarded to the grievance officer; that request, however, was not honored by Counselor Reis. Defendants offer no argument or evidence that Plaintiff could have submitted his grievance to the grievance officer in any other way than placing it in the grievance box. *See Hill v Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016) (finding

---

[2] For example, Defendants make no argument as to the adequacy, timing, or content of the grievances.

that an inmate is not required to comply with unannounced rules regarding the submission of grievances). By failing to forward a formal, written grievance to the grievance officer, Counselor Reis rendered the administrative process unavailable to Plaintiff and he was required to do nothing further. *Dole v. Chandler*, 428 F.3d 804, 811 (7th Cir. 2006) ("Because Dole properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that Dole failed to exhaust his remedies."); *See e.g. Wilder*, 310 Fed.Appx. at 13-14.

Even if Plaintiff had not properly submitted the September 11 grievance for review by the grievance officer, it is undisputed that he submitted the November 7 grievance, seeking to be seen by an optometrist and money damages, and requested that it be forwarded to the grievance officer. That grievance also was not forwarded by Counselor Reis, rendering the process again unavailable. Finally, by failing to respond to Plaintiff's emergency grievance, submitted after November 8, 2013, the process was further rendered unavailable. Put simply, Defendants have failed to carry their burden and demonstrate that Plaintiff did not exhaust his administrative remedies. Indeed, the only evidence before the Court is that Plaintiff was thwarted from having his grievances heard by the grievance officer. Defendants are not entitled to summary judgment.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Wexford Health Sources, Inc., (and joined by Defendants Hohenbary and Coe) (Doc. 60) be **DENIED** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The

failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: June 17, 2016**

        **DONALD G. WILKERSON**
        **United States Magistrate Judge**